DORIS COMFORT, Appellee v. VALLEY INVESTMENT COMPANY, Appellant.

No. 45991.

AUGUST 11, 1942.

Havner & Powers, Margaret I. Cunningham, and Whitfield & Musgrave, all of Des Moines, for appellant.

Hallagan, Fountain, Steward & Cless, of Des Moines, for appellee.

WENNERSTRUM, C. J.— Appellee brought an action for damages as a result of personal injuries received when a vault door and the frame holding the same fell on her. The appellee was employed in the office of a tenant located in the building owned and operated by the appellant, Valley Investment Company. Appellee's action was based upon the claim that the employees of the appellant were negligent in failing to place a warning sign at or near the vault door and frame and in leaving the vault door and the vestibule frame standing unsupported after the retaining walls had been taken away. The appellant filed a general denial, and further alleged that any danger in connection with the vault door and the vestibule frame was apparent to a casual observer, and that if the appellee suffered any injuries they were due to her own negligence and not to any fault on the part of the appellant. The cause was tried and submitted to a jury, who returned a verdict in favor of the appellee. The defendant appeals.

The record discloses the following facts: The appellee was a secretary and typist, an employee of an insurance company whose offices were located in the Valley Bank Building in Des Moines, Iowa, and which building was owned and operated by

the appellant. By reason of a new lease entered into by her employer and the appellant building company some changes in the office arrangement of the insurance company were necessitated. In connection with this remodeling there was a change made in the vault room which required the tearing out of the sustaining walls that previously had surrounded the vault vestibule.

The remodeling work and the dismantling of the wall supports to the vault vestibule had been done in part prior to and on the Saturday and Sunday before the Monday when the accident occurred.

It is disclosed that on the Monday in question the appellee was the first employee of the insurance company to arrive at work. In connection with her duties she passed the open vault door and placed the mail, which had been received prior to her arrival at the office, on the desk of another employee at the south end of the insurance company's main office. In returning past the vault door, which was open and extending out into the room, she endeavored to close this door. It is shown that there was only about 12 or 15 inches space between the extension of the vault door which she had to pass and a near-by desk. The record further discloses that the open vault door was used as a prop to hold the vault vestibule from falling. It is further disclosed by the record that when appellee moved the door there was nothing to retain the vault vestibule and the door and they fell upon her.

In order to note the approximate position in which the vault vestibule and door were located we here incorporate one of the exhibits introduced at the time of the trial. This exhibit and the facts it discloses are not questioned by either appellant or appellee.

In order to set out the appellee's knowledge as to the condition of the vault vestibule and the door, her testimony is here quoted in part, as to this particular fact:

"After I deposited the mail on the desk, I started to walk north. When I came to the door, I closed the door to make room to go through there. I thought the door was blockading

the way and I tried to close it—got so far to that it naturally fell towards me.

"Q. Did you use more than one hand to do that? A. I probably had my purse but I couldn't say positively. Q. Do you remember whether or not the door was any more difficult to push on that occasion than it ever had been when it hadn't been torn down? A. The door closes very easy and I had no

trouble getting it started. I would say no. It started falling before I got it completely closed very far."

The appellee further testified:

"Q. And did you, as you proceeded south there or prior to that observe the situation of that vault door and frame as to whether or not the tile had all been removed? A. I don't think I thought about the tile being removed especially, the door looked like it was exactly what it had always been. Q. Do you mean as to where it sat? A. It appeared to be sitting in the same place, the usual position."

Appellee's further testimony is in part as follows:

"Q. Did you know just in what manner that door was held in position? A. No, I didn't know right the place it was anchored in the floor. Q. When you say that, just what do you mean? A. Well sir, I just always supposed that it was secured to the floor, bottom part of it. Q. You are referring to the steel bottom of the door? A. Yes, sir."

The grounds upon which the appellant seeks reversal in this court are: (1) That the court erred in failing to direct a verdict for the appellant in that (a) the injury was caused to the appellee by her own negligent act in attempting to close the vault door; (b) the appellee had full knowledge that the retaining wall had been taken away and that said vault door and frame would become unbalanced if moved; (c) appellant was under no duty to warn the appellee of the dangerous condition of the vault vestibule frame and door, inasmuch as it was apparent to the most casual observer; (d) there was no question of attractive nuisance in this case inasmuch as appellee is an adult; (2) that the court erred in failing to instruct the jury upon the defense pleaded by the appellant to the effect that the dangerous condition of said vault door and frame was obvious to the most casual observer; (3) that the court erred in including as a statement of the issues the entire petition of the appellee, verbatim, in that said petition contained conclusions of law which were misleading and confusing to the jury.

It is the appellant's contention that a casual inspection of the vault vestibule frame and door by the appellee would have disclosed to her the danger present. The portion of the testimony of the appellee which has heretofore been set out shows that she did not know the condition of the vault frame, and, as stated by the appellee, "I just always supposed that it was secured to the floor, bottom part of it."

I. It is the appellant's claim that the condition of the vault door and the vestibule frame in which the appellee found it, was so apparent that she was guilty of contributory negligence in endeavoring to close the door. We do not believe that the record substantiates this contention on the part of the appellant. This conclusion is borne out in our holding of Steele v. Grahl-Peterson Co., 135 Iowa 418, 427, 428, 109 N. W. 882, 885, where we said:

"If this defect was concealed, or not open to casual observation, as plaintiff's evidence tends to show, he was under no duty to make minute investigation, but could rightfully assume that defendants had performed their duty, providing a reasonably safe support for the floor, or concrete on which he was expected to walk and work."

To the same effect is the case of Mangan v. Des Moines City R. Co., 200 Iowa 597, 607, 608, 203 N. W. 705, 710, 41 A. L. R. 368, where we said:

"Negligence cannot be imputed to one who is deceived by appearances calculated to deceive an ordinarily prudent person. Care in avoiding injury implies that there is or would be, with all prudent persons, something to create a sense of danger; and it is for the jury to say whether or not the circumstances are such as would put a prudent and cautious person upon his guard. Dusold v. Chicago G. W. R. Co., 162 Iowa 441."

To the same effect is the case of Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 603, 231 N. W. 665, 670, where it is stated:

"Conflicting questions of fact are to be settled by the jury. If the facts are not in conflict, and it is plain that appellant

was guilty of contributory negligence, then the court should direct a verdict accordingly.

" 'The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury, rather than the court, to detect and settle.' Murphy v. Iowa Elec. Co., 206 Iowa 567 (local citation 571).

"When considering appellant's contributory negligence, two elements are involved: First, What did the appellant do? Second, What was the effect of his action? Provided that either or both of said propositions present uncertainty, then there is a jury question concerning the existence of contributory negligence."

The appellee's testimony indicated that she had no knowledge of the condition of the vault frame and that it was unsupported except by the vault door protruding out into the space which the appellee had to pass. We have given consideration to the case of Rogers v. Chicago, M., St. P. & P. R. Co., 214 Iowa 1018, 243 N. W. 351, which has been cited by the appellant as controlling in this case. The facts are not at all similar to the evidence presented in this present situation. Consequently, we conclude that a directed verdict should not have been sustained and that the case was properly submitted to the jury.

II. Complaint is made that the court erred in failing to instruct the jury upon a defense pleaded by the appellant. One of the allegations of the appellant's answer was that the repairs which were being made and the resulting dangers were apparent to the most casual observer and known to the appellee. This defense raised the issue of contributory negligence. We have examined the instructions and find that the issue of contributory negligence was commented upon several times. We do not believe that the allegation as made by the appellant was other than a statement pertaining to contributory negligence. Inasmuch as this issue was properly commented upon, we conclude there was no error in the failure to give a separate instruction upon this claimed additional defense made by the appellant in its answer.

III. There is also a claim of error to the effect that

the trial court incorporated the petition of the appellee in submitting the statement of the issues in the instruction. We find no error in relation to this assertion made by the appellant. We have examined the pleadings and the instructions of which complaint is made. The petition is brief and definite and the instructions could not be very easily paraphrased and limited more than they were.

In the case of Canfield v. Chicago, R. I. & P. Ry. Co., 142 Iowa 658, 663, 121 N. W. 186, 188, there is an extensive comment made as to the duty of the trial court to limit the pleadings to the exact matters to be submitted to the jury. However, it is there stated:

"Where the pleadings are copied for a statement of the issues, no prejudice will be presumed, but the court will look to the statement so made; and, if it appears that the issues are so stated as to clearly present the matters involved, and there is no reason to believe that the jury may have been misled thereby, no reversal will be ordered."

We have concluded, after an examination of the pleadings and instructions, that there is no reason to believe the jury could in any manner have been misled by the instructions. Complaints of a similar character have been made in some of our prior cases, and, where justified, have been commented upon to the same effect.

We have given careful consideration to the record and to the appellant's claimed errors, and find that they are without merit. We therefore affirm the trial court.—Affirmed.

All JUSTICES concur.