ELEANOR MOORE, Plaintiff-Appellant, *v.* EVERETT SNODGRASS, INC., *et al.*, Defendants-Appellees.—(THE CITY OF GALESBURG, Defendant.)

Third District   No. 79-538

Opinion filed August 12, 1980.

STOUDER, J., concurring in part and dissenting in part.

Larry T. Frantz, of Raymond C. Rose, Ltd., of Peoria, for appellant.

Barash & Stoerzbach, of Galesburg, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Eleanor Moore filed personal injury actions against Everett Snodgrass, Inc., Schlutz Enterprises, Inc., and the City of Galesburg, as a result of injuries suffered in a fall on defendant Schlutz' parking lot. The lot was constructed by defendant Snodgrass. Initial complaints and amended complaints against the defendants were dismissed, on motion of the defendants, with leave to amend given after each dismissal. The case proceeded, in a consolidated action against defendants Schlutz and Snodgrass, on the plaintiff's second amended complaint. Summary judgment motions were subsequently filed by both defendants. They were granted by the circuit court. Plaintiff Moore appeals from the entry of summary judgment against her in the action against Snodgrass, and she also seeks to appeal from the dismissal of certain of her earlier complaints against defendant Schlutz.

The record discloses that the defendant Schlutz Enterprises, Inc., operates a Kentucky Fried Chicken restaurant in Galesburg. In 1971, Schlutz Enterprises contracted with the defendant Everett Snodgrass, Inc., to have Snodgrass construct a blacktopped parking lot on the premises occupied by the restaurant. The parking lot was completed that same year. Almost four years later, on July 17, 1975, Eleanor Moore was crossing that parking lot, in order to deposit mail in a mailbox off the premises, when she tripped on an iron stake, or piece of angle iron, embedded in the blacktop and allegedly obscured by weeds and grass growing around it. To recover for injuries suffered in the fall, Eleanor Moore filed a negligence action against defendant Schlutz in July 1976. That complaint was dismissed upon the defendant's motion, for failure to allege the status of the plaintiff while on his premises and for failure to allege facts concerning plaintiff's status. Leave to amend was granted. There followed, over the next two years, several amended complaints against Schlutz Enterprises, both in the original action and in another action in which defendant Everett Snodgrass, Inc., was also made a defendant. The several complaints against Schlutz were also dismissed, either for failure to allege the status of the plaintiff and the resulting duty of the defendant, or for failure to clearly allege the status of plaintiff. In all the dismissals, leave to amend was granted by the circuit court.

Finally, in September 1978, pursuant to leave granted from a prior dismissal, plaintiff Moore filed her "Second Amended Complaint" in the consolidated action against Schlutz and Snodgrass. Although so denominated, it was, in fact, the fifth complaint filed against defendant Schlutz. Count I of that complaint was against defendant Snodgrass and count II was against defendant Schlutz. The count against Schlutz alleged that the plaintiff was a licensee while on the premises of the defendant and that the defendant was guilty of willful and wanton conduct resulting in plaintiff's injuries. Count I, against Snodgrass, alleged, in pertinent part, that Snodgrass had deceitfully concealed the presence of the iron bolt or stake when he constructed the parking lot. Motions for summary judgment, after some discovery, were filed by both defendants with supporting affidavits and depositions. Plaintiff filed counteraffidavits and a portion of a discovery deposition. The circuit court thereafter entered summary judgment against plaintiff and for both defendants on the second amended complaint.

The notice of appeal filed by plaintiff sought to review the granting of the orders granting summary judgments and the dismissal, entered April 27, 1977, of the initial complaint filed in this matter. In its briefs on appeal, the plaintiff now concedes that she has no issue with the entry of summary judgment in favor of defendant Schlutz, but she now seeks to challenge the earlier dismissal of her first amended complaint, which

order of dismissal was entered October 6, 1977. Error is alleged, and issue raised, with respect to the entry of summary judgment in favor of the defendant Snodgrass.

In challenging the dismissal of the earlier complaints against Schlutz, the plaintiff Moore asserts that she was a business invitee at the time of her fall, and that the court erred, therefore, in dismissing the earlier complaints. As a business invitee, the defendant would have owed her a duty of ordinary care, while as a mere licensee, the defendant was obligated to refrain from willful and wanton conduct which might endanger her. The defendant Schlutz answers, arguing that the plaintiff has waived any claimed error in the earlier dismissals of her prior complaints by amending over and proceeding thereon. As to this issue, we note the general rule expressed in *Fishel v. Givens* (1977) 47 Ill. App. 3d 512, 517, 362 N.E.2d 97, as follows:

> " ' "[I]f a party, after an order or judgment upon demurrer to the pleadings is given against him, under leave of court, amends the pleading demurred to, * * * he acquiesces in the judgment or order upon the demurrer, and will not be permitted to appeal therefrom, or, unless an exception is duly saved, to assign it for error in the appellate court * * *." ' " (Quoting from *People ex rel. Valentine v. Biggs* (1941), 312 Ill. App. 199, 207. See *Henkaus v. Barton* (1977), 56 Ill. App. 3d 767, 371 N.E.2d 1166; *Erickson v. Walsh* (1973), 11 Ill. App. 3d 99, 104, 296 N.E.2d 36.)

In the instant case, the first three complaints against Schlutz were dismissed for insufficiencies with regard to the allegations of the plaintiff's status and the duty owed to plaintiff by the defendant. After each dismissal, leave to amend was granted, and an amended pleading was filed by plaintiff. So far as the record indicates, no exception or procedure, seeking to adhere to the complaint, was taken concerning the earlier dismissals. The last complaint filed, that entitled "Second Amended Complaint," alleged only that the plaintiff was a licensee on defendant's premises. There was no count in that complaint alleging her status to be that of invitee. The plaintiff was free to include such count with such an allegation asserting that plaintiff was an invitee, but apparently chose not to do so. Under the circumstances, any error by the court in dismissing the earlier complaints is not properly presented to this court. (*Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97; *Erickson v. Walsh* (1973), 11 Ill. App. 3d 99, 296 N.E.2d 36.) While we would be justified in determining the issue on such grounds, we shall proceed to a consideration of the merits of the plaintiff's argument.

■■ As mentioned, the plaintiff alleges the court erred in dismissing her complaints against Schlutz, since, it is alleged, she was a business invitee of the defendant when the injury occurred. Yet, the dismissal orders by

the court were predicated upon plaintiff's failure to allege the status of the plaintiff. Neither complaint focused upon allegations that plaintiff was a business invitee, nor did the trial court, in dismissing the complaints, find that the plaintiff was not a business invitee. The initial complaint alleged no facts from which plaintiff's status could be divined, and the only facts set forth in the first amended complaint indicated that the plaintiff's sole purpose in being upon the defendant's property was for the purpose of reaching a public mailbox off that property. She was merely cutting across the parking lot. There was no allegation that she was patronizing defendant's restaurant or intended to patronize it. Thus, no facts are alleged in any of the complaints which would indicate any mutuality of interest between the defendant-owner Schlutz and the plaintiff such as would support a conclusion that she was a business invitee at the time of her accident. (See *Olsen v. Chicago Dock & Canal Co.* (1972), 5 Ill. App. 3d 1105, 1108, 284 N.E.2d 443.) In the absence of any facts alleged which would support a conclusion that the plaintiff was a business invitee, and in the absence of any specific allegation that she was a business invitee, the court did not err in dismissing the complaints.

In a further attempt to support the action against defendant Schlutz, plaintiff's counsel urges this court to abolish the status distinctions (invitee or licensee) between persons on the property of another with the resulting differences in the duties of care owing to such persons. While such arguments, calling for a uniform duty of reasonable care owing to persons on the property of another have merit, it would not be appropriate for us to reverse the established policy of the State thereon. The Illinois Supreme Court has recently shown no inclination to take the lead in abolishing such distinctions of status, and it continues to apply such distinctions. (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177.) As noted in the case of *Mentesana v. LaFranco* (1979), 73 Ill. App. 3d 204, 391 N.E.2d 416, the current position of the Illinois Supreme Court is that any such change, while to be recommended, should come from the legislature. Having disposed of all the issues raised regarding the judgment in favor of the defendant Schlutz, we turn to the issue raised with respect to the defendant Snodgrass.

The plaintiff Moore argues that the court erred in entering summary judgment for defendant Snodgrass since there existed a genuine issue of material fact in the case. Snodgrass, as an independent contractor whose work had been completed and accepted by contractee Schlutz, was not liable for any negligence in the construction of the parking lot, unless plaintiff could show that an exception to the general rule of nonliability applied. (*Paul Harris Furniture v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275.) In the *Paul Harris* case, the supreme court set forth the general rule and the exceptions:

"The general rule is that where an independent contractor is employed to construct or install any given work or instrumentality, and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as the result of defective construction or installation. [Citation.] This rule, however, is subject to certain well recognized exceptions whereby a contractor may be held liable even after acceptance of his work by the contractee (1) where the thing dealt with is imminently dangerous in kind, such as explosives, poisonous drugs, and the like, (2) where the subject matter of the contract is to be used for a particular purpose, requiring security for the protection of life, such as a scaffold, and (3) where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, and which causes an accident when the thing is used for the particular purpose for which it was constructed." (10 Ill. 2d 28, 40.)

Plaintiff's action in the instant case was predicated upon the third exception, liability imposed when an independent contractor knows, or should know, of a defect in the work which may be dangerous, and conceals that defect. While the *Paul Harris* case set forth the general rule and exceptions, the only Illinois case addressing the specific requirements under the third exception is the case cited by the supreme court in *Paul Harris, Healey v. Heidel* (1918), 210 Ill. App. 387. The allegedly defective product in *Healey* was a window sill constructed by the defendant contractor, who was an independent contractor. The pertinent analysis utilized by the court in that case was twofold: (1) was there any defect in the workmanship which caused the plaintiff's injuries, and (2) was there any deceit *or* concealment as regards the defect. (210 Ill. App. 387, 392.) The disjunctive is specifically used and it is apparent, from the rationale for the rule given, that under the term "deceit" the court meant to include both actual fraud and concealment. In denying the contractor's liability in that case, the court noted that even if there had been a defect in the workmanship, that defect would have been apparent to the owner of the premises, who accepted the completed work. (210 Ill. App. 387, 391.) Therefore, any liability for harm resulting from the defect would fall upon the contractee-owner who had accepted the work and knew, or should have known, of the defect.

■■ The question in these cases is who ought equitably to be liable to an injured plaintiff when such defect in workmanship causes injury. The court's analysis indicates that liability ought be imposed upon the contractee-owner who accepts completed work, where he knew, or should have known, of the existence of the defect. That result accords with the general rule that a contractor normally is not liable for his

negligence after the work is completed and accepted. The exception operates where there is a defect in the work, of which the contractor knew, or should have known, in the exercise of reasonable care and that defect was not discovered, nor could have been discovered, upon reasonable inspection by the contractee who accepts the work. Thus, "where a defect in the work caused by a contractor's negligence is so concealed that it could not reasonably be detected on inspection by the contractee; [or] where the contractor practices fraud in concealing defects in the completed work" (41 Am. Jur. 2d *Independent Contractor* §49, at 821-22 (1968)), then, under the third exception set forth in *Paul Harris*, a contractor is liable for injuries to persons using the product or area involved for the purposes for which it was constructed, where the injuries result from the defect. Deceit, in the strict sense implying intentional fraudulent action, is not always necessary. When the exception is properly seen as encompassing both fraudulent or "deceitful" concealment of a defect and negligent concealment of a defect, then there will be no injured plaintiff without potential recourse and remedy as against the contractor. Otherwise, if deceitful concealment is required to be proven, an injured plaintiff would have no remedy against either the contractee-owner or the contractor, when the defect resulted from the contractor's negligence and was also concealed from notice by the contractor's negligence. Clearly, in that circumstance, liability ought to be imposed upon the independent contractor.

Having now set forth the appropriate standard and rule of law governing the case against defendant Everett Snodgrass, Inc., we turn to the question of whether there existed a genuine dispute on any material fact in that case. If such a dispute exists, then summary judgment is inappropriate. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) If there is a dispute as to a material fact, or if undisputed facts give rise to different inferences, then summary judgment is inappropriate, as the inferences on such a motion favor the party resisting the summary judgment motion. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.

■■ There is clearly a dispute of fact at this time concerning the existence of the defect at the time of construction. Both Everett Snodgrass and his son Jess, who worked on the construction of the lot, stated in their deposition testimony that they were not aware of any metal bolt or stake during construction. They testified that it would have been impossible for such an object to have been embedded in the blacktop during construction because of the nature of the method of construction. Both men stated that preparatory to putting down the asphalt, the entire lot area was bladed off with a small grader. Rock was then put down and compacted with a roller. After these procedures had been completed, the asphalt was put down and also rolled. According to the Snodgrasses, if a

piece of angle iron had been present, it would have damaged the blade on the grader or the roller. Neither piece of equipment was damaged. The evidence presented in opposition to the motions for summary judgment, however, indicated that the piece of angle iron may have been covered during the blacktopping and then later worked its way to the surface. That was the stated conclusion of Kevin Schlutz, who was present when the object was removed. It was also the conclusion of Kenneth Schrader, an engineer who examined the parking lot. His affidavit states that he had examined the area around the stake and its appearance is consistent with the stake having come from below ground. Further evidence in support of that inference is the deposition testimony of Robert Schlutz, operator of the restaurant and majority stockholder in Schlutz Enterprises, Inc. His testimony was that he was not aware at any time of a stake being placed in the blacktop, from the time the lot was blacktopped until the plaintiff was injured. He also testified that no repair work had been done to the lot in that area during the same period of time. It can thus be seen, that, at this stage of the litigation, there is an issue of fact as to the origin of the piece of angle iron and as to whether it was there when the blacktopping was done. While the Snodgrasses both deny any knowledge of the presence of the metal object, the evidence from Schlutz and Schrader, indicating its possible presence during the construction, also raises an inference that its presence should have been known to those doing the blacktop work, thus creating a dangerous condition. While we are aware of the apparent weakness of the plaintiff's evidence at this time, questions of credibility and weight are for the factfinder where there is a dispute in the evidence. If fact questions are raised, even on relatively weak evidence, summary judgment is inappropriate.

On the record before us, the court's entry of summary judgment in favor of defendant Everett Snodgrass, Inc., was erroneous. The cause is, therefore, reversed and remanded for further proceedings in the action against Snodgrass. Summary judgment in favor of defendant Schlutz Enterprises, Inc., is affirmed.

Affirmed in part and reversed and remanded in part.

STENGEL, J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:
While I agree with the majority opinion that the complaint against Schlutz was properly dismissed, I must disagree with the part of the opinion which holds that the trial court's dismissal of the complaint against Snodgrass was improper. I believe the majority has incorrectly interpreted and applied the test for liability of independent contractors as

stated in *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275. The rule states that where an independent contractor has completed the work and it has been accepted by the employer and the contractor has been discharged, the contractor is no longer liable to third persons for injuries received as the result of defective construction unless the work falls within one of three exceptions.

The exception with which the instant case is concerned holds the contractor liable "where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, and which causes an accident when the thing is used for the particular purpose for which it was constructed." (*Paul Harris*, 10 Ill. 2d 28, 40, 139 N.E.2d 275, 282.) It is important to note that the exception specifically states that the concealment must be deceitful for the contractor to be liable. *Black's Law Dictionary* 493 (4th ed. 1951) defines deceit as:

> "A fraudulent and cheating misrepresentation, artifice, or device, used by one or more persons to deceive and trick another, who is ignorant of the true facts, to the prejudice and damage of the party imposed upon."

It is clear from the above definition that simple negligence is not encompassed as part of deceit. Therefore, since the exception to contractor liability speaks of deceitful concealment it is obvious that merely negligent concealment, without some type of fraud or intent to deceive, is not enough to make the contractor liable.

The rule set forth in *Paul Harris* was first promulgated in *Healey v. Heidel* (1918), 210 Ill. App. 387, on which the majority relies heavily in holding that simple negligence is actionable. In *Healey* the court held the defendants-independent contractors not liable for a window sill which they constructed. In its analysis, the court found the work was not defective and that, regarding the contractors, "there was no concealment or deception practiced by them." (210 Ill. App. 387, 392.) The majority claims that the use of the disjunctive means that the court meant that both deceptive and negligent concealment were actionable. I am convinced this interpretation is erroneous. Taken within the context of the case as a whole, it is clear that the phrase "concealment or deception" was an instance of using the two words as synonyms and not with the intent of creating two separate categories of liability, fraud and negligence. To read the passage as creating a separate category of negligence is to wreak havoc with the language of the rest of the opinion in which the rule was stated. The rule specifically speaks of deceitful concealment, and makes no mention of liability for negligent concealment. Had the *Healey* court intended to make negligent concealment a basis for liability, it must be assumed the court would have expressly stated it as part of the rule. Since it was not so mentioned, it makes no sense to assume that the court

intended to make negligence a basis for liability in a part of the opinion away from the statement of the rule. Therefore, *Healey* cannot serve as authority for the proposition that negligent concealment is a basis for liability.

What the majority has done is to state the rule requiring deceitful concealment and then hold that deceit is not required. As shown above, *Healey* is not authority for this proposition. Nor has the majority cited any other authority for this theory. The rule is that some kind of deceit or fraud is necessary for an independent contractor to be liable. Plaintiff in the instant case has failed to make any allegation that defendant Snodgrass engaged in deceit. Therefore, as a matter of law, defendant Snodgrass cannot be held liable, and the trial court was correct in dismissing plaintiff's complaint.